PLEASE STAMP
&
RETURN

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

JOHN DOE #7 AND JANE DOE #11,
INDIVIDUALLY AND AS PARENTS AND NEXT
FRIENDS OF JOHN DOE #8, A MINOR

        Plaintiffs,

v.

PRINCE GEORGE'S COUNTY BOARD OF
EDUCATION

Serve on:
Kevin M. Maxwell
Chief Executive Officer
Sasscer Administration Building
14201 School Lane
Upper Marlboro, MD 20772

and

PRINCIPAL MICHELLE WILLIAMS
4715 Colonel Darnell Place
Upper Marlboro, MD 20774

and

DEONTE LAVELL CARRAWAY (#61899-037)
USP Tucson
US Penitentiary
P.O. Box 24550
Tucson, AZ 85734

        Defendants.

PR GEO CO MD #31

2018 OCT 25 PM 3: 52

Clerk of the
Circuit Court

Case No.: CAL18- 39692

## COMPLAINT AND JURY TRIAL DEMAND

1

COMES NOW, the Plaintiffs, John Doe #7 and Jane Doe #11, individually and as parents and next friends of John Doe #8, a minor, by undersigned counsel, Timothy F. Maloney, Matthew M. Bryant, Alyse L. Prawde, and Joseph, Greenwald & Laake, P.A., and David M. Simpson and David M. Simpson, P.A. files this Complaint, and sues Defendants Prince George's County Board of Education, Principal Michelle Williams, and Deonte Lavell Carraway, claims damages, demands judgment, and states for cause the following:

## **INTRODUCTION**

This civil rights lawsuit arises from the sexual abuse and exploitation of at least 23 elementary school age children at a public school in Prince George's County, Maryland, at the City of Glenarden's city hall, at Zion Praise Tabernacle Lutheran Church, and at victims' homes. This sexual abuse was perpetrated by a teacher's assistant, Deonte Carraway, who documented this sexual abuse on his cell phones and circulated these videos of child pornography by "Kik," a phone based social media application.

This lawsuit is brought on behalf of a then-fifth grade victim of this abuse seeking damages against the Board of Education, the school's principal, and Deonte Carraway. Carraway's abuse was facilitated by decisions made by the Principal and the Board to allow him unfettered access to minor children in the building at the time and place of his choosing, despite repeated complaints by teachers, parents, and students about his inappropriate conduct.

Carraway was indicted in the Circuit Court for Prince George's County on 270 counts of sex abuse of a minor, sex offenses, and child pornography as to 23 minors. Carraway pled guilty on September 28, 2017 to 23 counts of child sex abuse and pornography and was sentenced to 100 years in prison. He also pled guilty in the U.S. District Court for the District of Maryland to

15 counts of sexual exploitation of a minor to produce child pornography and was sentenced to 75 years in federal prison.

The Board of Education and Principal Williams facilitated Carraway's predatory conduct, giving him the run of the school, authorizing him to walk into classrooms at will during instruction and pull students from their classrooms, and then sexually abuse them in the school building, including in the school bathrooms, the music room, and behind the stage in the cafeteria, during the school day instead of attending their classes. Defendants Board of Education and Principal Williams allowed Carraway to remove students from the classroom for his own purposes during instructional time, which facilitated Carraway's sexual abuse of students in the school building during the school day and during instructional periods, resulting in the ultimate deprivation of the educational and civil rights of Plaintiff and other students and serious and permanent emotional and psychological damage to the student victims, including the Plaintiff.

Because of the decisions of Principal Williams and other Board administrators, Sylvania Woods Elementary School became an unchecked breeding ground for sexual abuse by Deonte Carraway, which extended into the Glenarden Municipal Center, a church, and in the victims' private homes.

The Board of Education, Principal Williams, and teachers at the school knew or should have known of Carraway's abusive and predatory conduct in the school building and in events facilitated by the school. At a minimum, they were deliberately indifferent to Carraway's behavior. The Board of Education and Principal Williams had extensive notice of Carraway's abusive and inappropriate conduct and yet chose to continue to enable his flagrantly inappropriate conduct and the danger it posed to students.

Multiple students reported Carraway's inappropriate and abusive conduct to Principal Williams and teachers, yet no meaningful investigation or action was taken. Numerous teachers also reported to Principal Williams and other Sylvania Woods administrators and teachers their concerns about Carraway's inappropriate touching and inappropriate conversations with students, his immature and childlike nature, and his constant disruption of their classrooms.

In June 2015—nearly eight months before he was arrested—Principal Williams met with Carraway and raised her concerns about his inappropriate contact with students in private places inside the school building. She advised him to only engage students in conversations that are in plain view of the public so that inappropriate actions or conversations do not occur. Following the meeting, Principal Williams sent Carraway the following email:

email: "mwilliam@pgcps.org Michelle W"          Monday, June 15, 2015 at 2:51:31 PM Eastern Daylight Time
To: email: "deonte.carraway@pgcps.org Deonte Carraway"

Good afternoon,

This is a follow up to our conversation held last week. During our conversation we discussed the importance of using good judgement when interacting with students.

You were advised to only engage students in conversations in areas that are in plain view of the public. This practice will ensure that actions or conversations that could be deemed inappropriate do not take place.

If you have any further questions or concerns please contact me directly.

Michelle Williams
Principal
Judge Sylvania Woods ES

Despite Principal Williams' knowledge and concern about Carraway's inappropriate behavior, she still permitted him to work every day at the school, walk students home, pull students out of classrooms, recruit students for his choir, recruit students for his after-school "tutoring" group, and supervise an overnight trip with students. She also permitted Carraway to escort students to bathrooms and gave him the responsibility of overseeing the school's closets,

which are places where he sexually abused students and coerced students to engage in sexual acts with each other that he recorded.

The Board of Education also failed to adopt and implement reasonable policies and procedures to ensure that Carraway was not given unlimited access to children and that there was not such a total lack of supervision where he could sexually abuse students on school property during school hours.

Defendants' reckless decisions, gross negligence and willful indifference to the safety of the students resulted in profound damage to at least 23 Sylvania Woods students. Nearly all have suffered serious psychiatric damage because of this sexual abuse. Most will require extended therapy. Some are suicidal. Others are ashamed and fearful. All of their families have been devastated by what occurred in a school setting and what could have been avoided if the Board and its principal had acted responsibly.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter and all parties pursuant to Md. Code, §§ 6-102 to -103 of the Courts and Judicial Proceedings Article ("C.J.P.").

2. Pursuant to C.J.P. § 6-201, venue in Prince George's County is proper. All material events occurred in Prince George's County, Maryland.

## PARTIES

3. Plaintiffs John Doe #7 and Jane Doe #11 are adult citizens of the State of Maryland who reside in Prince George's County. They sue in their individual capacity and as parents and next friends of John Doe #8, a minor. John Doe #8 is a resident of the State of Maryland and Prince George's County.

4. Defendant Prince George's County Board of Education (the "Board") is the governing body for the Prince George's County public school system. The Board's principal office is located at 14201 School Lane in Upper Marlboro, Maryland 20772. The Board is a corporate body created under Md. Code, § 3-103 of the Education Article. At all times mentioned, Deonte Carraway was an agent of Defendant Board as a teacher's assistant at Sylvania Woods Elementary School.

5. Defendant Michelle Williams is an adult citizen of the State of Maryland, residing at 4715 Colonel Darnell Place, Upper Marlboro, Maryland 20772. At all times relevant to the facts alleged herein, Williams served as the Principal of Judge Sylvania Woods Elementary School. Plaintiffs are suing Principal Williams in her official and individual capacity. Principal Williams was administratively suspended as principal after Carraway's arrest.

6. Defendant Deonte Carraway is an adult citizen of the State of Maryland. He is currently incarcerated in USP Tucson, U.S. Penitentiary, 9300 S. Wilmot Road, Tucson, Arizona. Prior to his arrest, he resided at 7930 Glenarden Parkway, Apt. 514, Lanham, MD 20706. At all times relevant to this complaint, Carraway was acting in his official capacity as an agent and servant of the Board of Education, as an agent and/or an apparent agent of the City, and in his individual capacity.

7. At all times relevant to the facts alleged herein, John Doe #8 was in the fifth grade at Judge Sylvania Woods Elementary School, which is located at 3000 Church Street in Glenarden, Maryland 20706.

8. At all times relevant to the facts alleged herein, the school was led by Principal Michelle Williams. Principal Williams was a policymaker at Judge Sylvania Woods Elementary School who had the ability to set and implement policy, control who was present in the school, control

school grounds, and who had a duty to monitor and supervise staff members, employees, and others who work and/or are present on school property for education purposes, including Deonte Carraway.

## FACTS COMMON TO ALL COUNTS

### *Judge Sylvania Woods Elementary School*

9. Judge Sylvania Woods Elementary School is a public elementary school located in Glenarden, Maryland. During the time of this complaint, the school was led by Principal Michelle Williams, Assistant Principal Donna Smith, and CSEP Coordinator Kathleen Mobley. Ms. Mobley was Carraway's direct supervisor during the time he worked and/or volunteered at Sylvania Woods Elementary School.

### *Carraway's Employment at Sylvania Woods Elementary School*

10. In 2014, Carraway presented himself at Sylvania Woods seeking to work with children at the school. In November 2014, Principal Williams arranged for Carraway to be hired as a dedicated assistant despite the fact that he had no background whatsoever which qualified him for this position and despite the fact that any reasonable investigation would determine that he was unfit and unsuitable to have unsupervised contact with children.

11. Principal Williams circumvented administrative procedures and "pulled strings" to place Carraway on the payroll even though his position required background references that had not been obtained. In December 2014, Board of Education officials reminded Principal Williams that Carraway still had not received the required background references. Eventually, the CSEP Coordinator, Ms. Mobley, a subordinate to Principal Williams, provided one letter of reference and the second letter of reference was never obtained.

12. From November 2014 to September 2015, Deonte Carraway was employed as a paid dedicated assistant at Sylvania Woods Elementary School. Carraway was initially assigned by Principal Williams to assist a student with significant learning disabilities, John Doe #20.

13. John Doe #20 complained about Carraway's physical contact, including that Carraway pinched him. The Board and Principal Williams did nothing about these complaints and did not remedy Carraway's abusive conduct toward the student. Soon after the complaints, John Doe #20 was frequently absent from school for long periods of time. Principal Williams did nothing to investigate John Doe #20's absences.

14. By September 2015, Carraway was told he could no longer continue as a paid dedicated aide, ostensibly because of budget cuts. But Principal Williams took steps to ensure that he could remain in the building and continue his unlimited and unsupervised access to children. She arranged for him to have credentials calling him "faculty/staff" even though he was neither. Carraway was neither faculty nor staff nor could he have qualified as such under any reasonable hiring standard. He was extraordinarily unsuited to perform such a role. Carraway had a high school diploma, was reported to have an IQ of 63, was immature and childish, and frequently came to school dressed in pajamas.

15. While the Board of Education was supposed to issue identification badges at the beginning of each year, it largely failed to do so in a timely manner. Many staff members at Judge Sylvania Woods had to wait months and months before the Board issued identification badges to staff members. This delay presented a safety risk at the school because exterior doors would be propped open so that staff members without identification badges could access the school.

16. Notwithstanding these facts, and although Carraway was no longer an employee, Principal Williams' authorization of credentials to serve as "faculty/staff" gave Carraway the appearance of official authority in the building, with teachers, staff, and most of all, with the school children themselves. Carraway regularly wore the 2015-2016 faculty/staff badge with his photograph on it through the school to demonstrate his authority from the principal even though he was not faculty or staff.



17. Because Carraway had been a paid employee the year before, Principal Williams was able to circumvent administrative procedures to have Carraway continue to work at the school on an unpaid basis. He was assigned to work in Board Employee #33 and Board Employee #56's classrooms, although he had no appropriate role in those classrooms. Both teachers complained to Principal Williams about his behavior, his disruption of instruction, and his grossly inappropriate conduct with students in those classrooms, yet Principal Williams did nothing and instead directed the teachers to allow Carraway to have access to their classrooms and students, despite his disruptive and inappropriate behavior.

18. Principal Williams allowed Carraway to continue to come to the building each day and continue to roam the school at will, and allowed him to pull children from the classrooms during instruction at will, authority he used to engage in sexual abuse with children in the building during the school day. Principal Williams permitted Carraway to take custody of school children in the school whenever and wherever he decided, despite the objections of the classroom teachers of these children.

19. At one point, a school official told Carraway to come only three days a week, Monday, Wednesday and Friday, attempting to limit his access in the building, but Carraway continued to come to school all five days a week, which Principal Williams permitted.

20. As a "teacher's assistant" at the school, Carraway was responsible for the care, supervision, and safety of the students, including Plaintiff John Doe #8.

### *Carraway was Given the Run of Sylvania Woods Elementary School*

21. Principal Williams initially authorized Carraway to be in the school building, even though his background check had not been fully completed. Once inside the building, Principal Williams gave Carraway the run of the building.

22. Over the objections of teachers and staff, Carraway was allowed to wander in and out of classrooms and pull children out of classrooms at will for any purpose, which tragically included instances of sexual abuse. Despite objections from teachers and students, Carraway was able to physically remove students from class during instruction and take them with him where he could be alone with them in the bathroom, his private room behind the stage, and the music room, where he engaged in sexual abuse with students of the school, including the Plaintiff.

23. Principal Williams and other administrators authorized Carraway to disrupt ongoing instructions in class and openly engage in inappropriate physical and verbal conduct with

children, which culminated in engaging in sexual activity with them and encouraging them to have sex with other children, which he photographed or recorded.

24. Carraway was permitted to openly engage in flagrantly inappropriate behavior. He would regularly show up at school wearing pajamas or other inappropriate clothing. Students were permitted to call him by his first name, "Deonte," and not "Mr. Carraway" or even "Mr. Deonte," further fostering his inappropriate relationships with the students.

25. Carraway would "twerk" in the school hallway with children. Twerking is "sexually suggestive dancing characterized by rapid, repeated hip thrusts and shaking of the buttocks especially while squatting." MERRIAM WEBSTER'S DICTIONARY, "Twerking," *available at*: https://www.merriam-webster.com/. This dancing was observed by at least one staff member.

26. Upon information and belief, a video of Carraway twerking with students at school was posted on social media and/or online and was viewed by staff members at the school but eventually taken down.

27. As a result of Carraway's behavior, Carraway was known by some staff members at Judge Sylvania Woods Elementary School as "pootie tang" and "pootie poo."

28. Carraway would frequently walk into classrooms and disrupt class instruction. Fifth grade teacher Board Employee #23 refused to allow Carraway into her classroom and complained to Principal Williams that Carraway was acting too childish. Similarly, Carraway came into the fourth grade class of Board Employee #20 so frequently that she finally ejected him because of his disruptive behavior.

29. Fifth grade teacher, Board Employee #22, observed Carraway constantly in and out of classrooms and roaming the hallways. Board Employee #22 finally asked Carraway not to go to

recess because he would get the students "so riled up." Other teachers complained that whenever Carraway would show up at recess or lunch duty, the students treated him like "a celebrity."

30. Carraway was also close friends with a dedicated aide, Board Employee #57, and he would frequently go into the classroom that she was assigned where he disrupted instruction.

31. When he would go into classrooms, Carraway would not only interrupt instruction, he would talk with and touch the students and show them videos on his phones. On one occasion, Carraway went into a classroom during instruction and gave Jane Doe #6 candy and a present. This occurred openly and in the presence of a teacher. Carraway was sexually abusing Jane Doe #6, who was in the fifth grade.

32. Carraway was observed by faculty skipping through the hallways and acting like a young child. Teachers reported to school administrators that they thought Carraway was "immature" and child-like. Teachers also reported being confused about Carraway's role in the building.

33. As part of his assigned responsibilities during the 2015-2016 school year, Carraway was assigned to assist two teachers with their classes. One of the teachers, Board Employee #56, reported to Vice Principal Donna Smith that she no longer wanted Carraway in her class because he was being disruptive. Principal Williams did nothing, and Carraway simply went into other classrooms where he interrupted instruction and continued to remove students at will, which resulted in Carraway sexually abusing those children.

34. The other teacher Carraway was assigned to, Board Employee #33, a special education teacher, complained to the administration about Carraway's unwanted presence in her classroom. She was told by the administration that Carraway was there "to help me with the students." Based on the response to her complaint, she felt she had no alternative but to allow Carraway to be present in her classroom, even though she knew his conduct was inappropriate. After

Principal Williams' negative response to her complaint, she felt that she "was obligated to assist him (Carraway) to assist the students and make sure they are focused and engaged." Board Employee #33 reprimanded Carraway for "going in and out of my classroom anytime he wants—he had to decide in or out." Board Employee #33 also observed that Carraway "did not report to anyone."

35. Because Carraway was not needed to assist in classrooms, Carraway was assigned to work in the school library and was given the responsibility of organizing the closets throughout the school. He used the closets at the school, including the closets behind the stage in the cafeteria, to sexually abuse students and coerce students to engage in sexual acts with each other, which he recorded on the multiple, brightly-colored cell phones that he owned.

36. Carraway would openly display multiple, different colored phones during the school day. He used these phones to record students performing sexual acts or record students using the toilet. He also handed out cell phones to students during the school day and instructed them to use the phones to photograph and video themselves. He gave one such phone to Plaintiff John Doe #8. Throughout the school day, including during the students' lunch time in the cafeteria, Carraway would pull up pornographic videos and pictures on his phones to show to students openly in the school building, including Plaintiff John Doe #8.

37. Since he was no longer assigned to a particular classroom, there was no reason that Carraway should have been going in to classrooms. However, he continued to walk in and out of classrooms at will.

38. Despite the fact that Carraway should have had no further role in classrooms, on occasion, teachers would leave Carraway alone with their students in the classroom. In January 2016, shortly before his arrest, Principal Williams allowed Carraway to serve as a substitute

teacher for the day when a teacher was absent, even though it was extremely inappropriate for him perform such a role and he was unqualified to do so.

39. Not only did Principal Williams give Carraway the freedom to roam the school and pull students out of class at will, she also permitted him to be involved in other school activities. Carraway assisted at basketball games that occurred after school at Sylvania Woods, including helping with the concessions and serving as the school mascot.

40. The access that Principal Williams and administrators gave to Carraway was so complete that he was even allowed to go onto the Kindercare bus without having any reason to do so.

41. Principal Williams and administrators assigned Carraway to walk students home from school every day. Faculty who performed this function typically walked students one block from school, getting them safely to the intersection of Church and Polk Streets. However, Carraway, in open view of the Principal, his direct supervisor, and faculty, would regularly walk students all the way home, usually going to the unsupervised home of John Doe #4 or Jane Doe #10, where he would claim to be running an after-school "tutoring" program. Plaintiff John Doe #8 participated in this "tutoring" program and would accompany Carraway and his peers to their homes. The group also met at John Doe #8's home at times. At these private residences, Carraway would engage in sexual acts with students immediately after school, and have students engage in sex with each other, which he would film using his phones.

42. Principal Williams also permitted Carraway to act as a chaperone with Sylvania Woods students on a camping and outdoor education trip to the William S. Schmidt Center, a Board of Education facility, on October 22-23, 2015, where Carraway continued to have access to students that he would ultimately sexually abuse.

43. Carraway was allowed to start a "male mentoring group" at the school, which he used to make contact with boys at the school for sexual contact. He also developed the aforementioned "tutoring" group after school—called GYG— for which he openly promoted and recruited students for in the school building. In fact, there was little or no tutoring with GYG, which instead formed as a vehicle for him to sexually abuse the students.

44. Carraway was allowed to use school facilities to copy permission slips for the choir he organized for the purpose of engaging in sex acts with students and filming them having sex with each other. Carraway also had teachers and staff members assist him in preparing and printing the choir permission slips and fliers. The use of school facilities to print and copy permission slips, and distribute choir-related materials at school, furthered the impression among parents that Carraway had the support of the school administration in these activities and furthered his access to the school children of Sylvania Woods even after school hours.

45. John Doe #8 received choir fliers from Carraway at school and was recruited while at school to join Carraway's choir.

### Carraway Invoked the Principal's Authority to Remove Students from Classrooms to Sexually Abuse Them

46. While in the school building during school hours, Carraway pressured, coerced and enticed children who were students at Sylvania Woods Elementary to perform sexual acts that he filmed on his phones. Carraway forced Plaintiff John Doe #8 to watch these sexual acts between other students during school hours and on school property.

47. Carraway used his status as an adult, a school employee, and agent of the school to persuade school children at Sylvania Woods, including Plaintiff John Doe #8, to perform sexual acts that he filmed. Carraway told some of the students, including the Plaintiff, that they would be participating in a "club" with him to help persuade them to engage in these sexual acts on

camera. The club, called the "AKA Club," stands for "ass kick ass." Carraway admitted that he instructed children who wanted to join the club to send sexually explicit photographs of themselves to him. The children that he persuaded to film these acts were as young as seven years old.

48. Carraway would invoke the authority of the principal by using Principal Williams' name and his friendship with her to remove children from the classroom during instruction for sexual abuse and other purposes.

49. Teachers and students became afraid to challenge Carraway's conduct because of his known friendship with the Principal and his use of her name. In fact, on or about January 8, 2016, one month before his arrest, Carraway walked into the fourth grade classroom of Board Employee #20 and pulled a student, John Doe #3, out of the class, falsely telling him that "the principal needed him." Carraway then took John Doe #3 into a room behind the stage in the cafeteria where he forced John Doe #3 and John Doe #4 to engage in a sexual act. Carraway videotaped this sexual activity, which he was directing, on one of his phones.

50. In order to get students to engage in these sexual acts, Carraway would frequently threaten physical force or threaten to tell law enforcement or the principal if the student refused. At times, Carraway would threaten to shoot the student if he or she refused.

51. In addition to filming and taking pictures of students engaged in sex acts during the school day, Carraway showed students pornographic videos and pictures he had taken of other students. He showed students these videos and pictures at school during school hours, including in the cafeteria, on the school playground, in the music room, or at lunch time.

52. Carraway's position as a teacher's assistant also permitted access to students in the cafeteria. Carraway frequently harassed students in the cafeteria while they were eating lunch.

He called one student "dumb" and "retarded," and repeatedly harassed a second grade student about his weight.

53. Carraway also harassed students in the school hallway. Carraway went up to a fifth-grade student in the hallway and told her about other students that he had coerced to engage in sexual acts.

54. Carraway openly engaged in inappropriate and unprofessional touching of students as well. Carraway would tickle John Doe on his sides, as well as John Doe #17, and while a teacher saw this occur, the teacher did not say anything to Carraway or the students. Carraway would also touch female students' buttocks at school and would punch students in the arms and stomach. He punched one student in the arm and threatened her, "Don't tell or else."

55. Another student, John Doe #13, was walking to class when Carraway began hitting him in the stomach, and touching and squeezing him in the hallway.

56. Carraway would openly fight with children in their classrooms. Teachers would tell Carraway to stop but he would simply continue. Some teachers finally gave up trying to control Carraway's behavior. On one occasion, Carraway pushed three kids on the floor: John Doe, John Doe #15, and John Doe #17, all of whom he was sexually abusing. Their teacher did nothing.

57. In Fall 2014, while on the playground, Carraway so agitated a fourth grade student, that the student hit or pushed Carraway. A fourth grade teacher who observed this, Board Employee #18, was so distressed by Carraway's behavior that she took the student to Assistant Principal Smith to talk about Carraway's conduct. Board Employee #18 described Carraway's behavior as "odd" and "childish." Assistant Principal Smith said she would follow up with Carraway, but never did, allowing him to continue his abusive and inappropriate behavior with children.

58. In this same time period, Carraway began playing "Truth or Dare" with students in the school building in order to have sex with them and to film them having sex with each other. On February 4, 2016—the day before he was arrested—Carraway pulled student John Doe #15 from Board Employee #71's class. Carraway had John Doe #15 and other students in the school bathroom play "Truth or Dare." Carraway forced the students to engage in sexual acts which Carraway filmed. This occurred on the same day that John Doe's uncle reported to Principal Williams the explicit pictures and messages from Carraway that were discovered on John Doe's phone.

59. On another occasion, John Doe #4 and John Doe #15 were forced by Carraway to engage in oral sex in the bathroom at school, which Carraway forced them to record on one of Carraway's phones. On another occasion, Carraway forced John Doe #15 and John Doe #17 to engage in oral sex in the band room at school.

60. Any reasonable response to the constant complaints about Carraway would have prevented this abuse. Any reasonable screening of Carraway's suitability to be in the school building and have access to the children would have prevented this abuse. Any reasonable supervision of Carraway's behavior in the school building would have prevented this abuse.

61. At all times relevant to this complaint, Carraway acted as an agent of the Board and this status and position of influence, control, and authority conferred by the Board permitted, facilitated, enabled, and caused this conduct to occur. Specifically, during the school day and on school property, the Board gave Carraway access to elementary age students, including Plaintiff John Doe #8. The Board gave Carraway a position of influence over these students, including John Doe #8. The Board gave Carraway control of these students and permitted Carraway to have and use his authority as a teacher's assistant to remove students from classrooms, transport

the students to bathrooms, auditoriums, or other locations on school property, and perpetrate sexual abuse during the school day, which he documented by recording these acts.

62. Carraway's conduct, the Board's conduct in facilitating his access to students, the Board's indifference to the severity of his conduct, and the Board's outright rejection and refusal to take action about his conduct was so severe, pervasive, and objectively offensive so as to undermine and detract from the victims' educational experiences such that the students were effectively denied equal access to the school's resources and opportunities.

**The Board of Education is responsible for Carraway's abuse of Judge Sylvania Woods' students that occurred both on and off campus because the Board's deliberate indifference after being placed on notice facilitated additional incidents of sexual abuse and forced abuse victims to suffer discrimination at school arising from their abuse.**

63. Carraway sexually abused the minor Plaintiff and other students both at Judge Sylvania Woods and off school property during a time period that he was an employee and/or agent of the Board of Education.

64. The Board of Education brought Carraway into contact or association with the minor Plaintiff by hiring Carraway and placing Carraway in a position of authority, control and influence over the minor Plaintiff.

65. The Board of Education and its agents are mandatory reporters, including Michelle Williams, Donna Smith, Gwendolyn McNair, Board Employee #43, Board Employee #56, Board Employee #23, and Board Employee #51, which requires that these individuals report to the appropriate authorities "as soon as possible" and submit a "written report" within 48 hours if the educator has "reason to believe that a child has been subjected to abuse or neglect." Md. Code § 5-704 of the Family Law Article.

66. As described in this Complaint, the Board of Education and its agents received both actual and constructive notice that Carraway had a propensity to abuse children. As a result, the

Board of Education knew or should have known that Carraway presented a risk of sexually abusing the minor Plaintiff and the other students that Carraway abused.

67. Had the Board of Education and/or its agents reported Carraway's conduct when it received actual and/or constructive notice, Carraway would have been removed from the school and/or arrested and the minor Plaintiff would not have been sexually abused by Carraway either at school or off-school property.

68. After children, including the minor Plaintiff, were sexually abused both on and off campus, those victims, including the minor Plaintiff, faced discrimination at Judge Sylvania Woods when these victims were forced to face their abuser on a daily basis following the abuse. Specifically, sexual abuse victims, including the minor Plaintiff, were forced to confront and be subject to Carraway's authority, power, control, and influence over them during the school day as a result of Carraway's employment and/or position at the school. This discrimination denied these victims, including the minor Plaintiff, education opportunities.

### *Sylvania Woods Walk Home Program*

69. Carraway's job responsibilities at Judge Sylvania Woods Elementary School included escorting a group of children home at the end of the school day. At the end of the school day, the school would make an announcement and children who were neighborhood walkers would report to the cafeteria to wait until they were dismissed. The school designated Carraway as a person responsible for escorting a group of children home.

70. While the children waited to be dismissed, other teachers would observe Carraway interacting with the children, exciting them, and rough housing with them. Teachers observed children regularly hugging him or viewing images or videos on Carraway's phone. This was frequently some type of pornography. When the children were dismissed, Carraway would then

escort this group of children home, including John Doe #2, John Doe #4, Jane Doe #11, and other students.

71. Carraway would make harassing comments to students and instigate fights between students during these walks home from school. Carraway once told a second-grade student who was part of his walk home group that "you suck on your mom's titties." The student told his mother about the harassing comment, who subsequently called Principal Williams and repeated the comment. Rather than addressing this with Carraway, Principal Williams simply referred the parent to another administrator, Ms. Mobley. Ms. Mobley defended Carraway, stating that the second grader had made inappropriate comments in response to Carraway.

72. Rather than addressing the issue with Carraway, prohibiting Carraway from walking students home, or investigating the matter, the administration's solution was to have the second grader and his brother leave their classrooms 10-15 minutes early to walk home by themselves in order to avoid contact with Carraway during their walk home, thereby depriving them of educational experiences and denying them equal access to education.

73. Principal Williams knew that Carraway should not have been charged with escorting children from the school back to the homes of school children. By June of 2015, Williams had actual knowledge that Carraway should not have been in the school and he should not have had contact with children. Nevertheless, the Board charged and entrusted Carraway with these "walk home" responsibilities during the 2014-2015 and 2015-2016 school year.

74. On many occasions, Carraway would sexually abuse children in private homes, including the homes of Plaintiff John Doe #8, John Doe #4, and Jane Doe #10, after walking the children home.

75. The Board of Education is liable for abuse that occurred in private homes as a result of Carraway because the Board knew or should have known that permitting Carraway to walk these children home involved an unreasonable risk of harm to the children by Carraway.

76. Additionally, Carraway's status as a trusted staff member at Judge Sylvania Woods Elementary School facilitated access to those children and sexual abuse at other locations – including private homes, the Glenarden Municipal Center, the Zion Praise Tabernacle Lutheran Church, and other locations – because the Board permitted Carraway to come into contact with children at the elementary school and develop relationships with these children and their parents.

### *Carraway's Abuse of Students at the James R. Cousins, Jr. Municipal Center*

77. Carraway served as the Choir Director of the City of Glenarden Voices of Youth Choir. He had been the Choir Director since at least October 2014.

78. Plaintiff John Doe #8 was a member of the City of Glenarden Voices of Youth Choir.

79. The Sylvania Woods administration assisted in helping Carraway recruit Sylvania Woods students to take part in his choir and provided him access to the students in order to do so. The Board permitted Carraway to come into contact with these students and use school facilities to recruit students for his choir, which he used as a vehicle to sexually abuse students.

80. On at least one occasion, a Sylvania Woods administrator made an announcement to the entire school over the intercom that a meeting would be taking place in the school cafeteria at the end of the school day for anyone interested in joining Carraway's choir. Carraway was permitted by the school administration to meet with interested students in the cafeteria at the end of the day before the school buses left. No other staff were present at the meeting.

81. Carraway was permitted to pass out fliers in classrooms at Sylvania Woods advertising his choir and providing information to choir members. An example of one such flier is below:

<u>CITY OF GLENARDEN VOICES OF YOUTH CHOIR 2015-2016YR</u>

**Rehearsals** Every Friday 6:15pm to 8:20pm

Choir **Officer** Meeting Friday September 4, 2015 8:00pm

Choir Directors **B-Day** Weekend Fun at Six flags **Selected** Choir Members Only on September 5, 2015 10:30am to 6:00pm **Bring Swim Wear/ Change of Clothes**

**Water Park** Will Be Open until 7:00pm

If Your Child Is Going They Need to Bring 29.99 to Get In the Park

Choir Has A Performance on September 27, 2015 Time **TBD** In Front Of WPGC 95.5 At The Station So We Are Working Towards That Now We Are Fired Up!!!!

Solo Auditions for the Following Songs!!!

1. I Give My Self Away By **William McDowell**
2. Same God By **Tye Tribbett**
3. I Love You Forever By **Tye Tribbett**
4. Freedom By **Eddie James**
5. Happy By **Pharrell Williams**
6. I'll Make it By **Hezekiah Walker**

Any Questions or Concerns Please Message Me Thanks!!!!!!

Mr. Deonte **Choir Director**

Email- Glenardenvoicesofyouth@gmail.com

Cell- (240)-764-9886

███████ **Parent Liaison/Treasurer**

████████

82. On other occasions throughout the school year, Carraway, or an administrator on his

behalf, would make an announcement on the school loudspeaker system for choir members to

come to the cafeteria to meet. Principal Williams and other administrators allowed Carraway to

use the school facilities to recruit systems and organize choir meetings and practices, all of which were used by Carraway to further his sexual abuse of Sylvania Woods students.

83. Carraway's choir also performed for Sylvania Woods staff and students on at least one occasion. Around Christmas 2015, the choir performed a show at Sylvania Woods for pre-K, kindergarten, first grade, and second grade students and their teachers and then did a second performance for the older students and their teachers. Carraway's choir also performed for Black History Month at the school.

84. Carraway would hold choir practices on Friday nights at the James R. Cousins, Jr. Municipal Center in Glenarden, Maryland. Choir practices were held in the Nutrition Room of the Municipal Center. While the scheduled times of practices would change, the practices were held sometime between 5:45 p.m. and 8:30 p.m.

85. The Municipal Center is a government building where the City of Glenarden's mayor, city manager, finance department, police department, code enforcement department, and public works department have offices and where the City Council meets.

86. Carraway and the City of Glenarden Voices of Youth Choir were actively involved in City activities and events. Carraway would have choir members take part in other City events. The Choir performed at the City's National Night Out in August 2015 and helped with a fundraiser at the Municipal Center on November 13, 2015. The Choir performed for the members of the Glenarden City Council in the Gold Room around Christmas 2014 and 2015.

87. Carraway coerced choir members to engage in sexual acts with him and with other students at the Municipal Center on multiple occasions. He abused students in the Municipal Center bathroom and in the Gold Room. The Gold Room is a rental facility located in the

Municipal Center that can be used by businesses, organizations, and private citizens to host business and social events.

88. The City of Glenarden enacted Rules and Regulations for the use of the Gold Room where some of this sexual abuse occurred. These rules and regulations tightly controlled access to the Gold Room and required supervision during periods it was rented:

> Administrative office hours for the City of Glenarden are 9:00 a.m. to 5:00 p.m., Monday through Friday. Gold Room tours and signing of the Rental Agreement by the City Manager are BY APPOINTMENT ONLY. Weekend and evening appointments will be accommodated on a limited basis.
>
> On the day of a scheduled event, the Gold Room will be open for the Rental Period as stated in the Rental Agreement. All activities related to the Renter's event (decorating, deliveries, and set-up and clean-up) must be completed within the Rental Period.
>
> The Gold Room closes at 12:00 a.m. (midnight) Sunday through Thursday and at 2:00 a.m. on Friday and Saturday. **During the Rental Period, the Gold Room Coordinator will be present and shall have sole authority at all times regarding the use of the facility**.

(Emphasis added).[1]

89. The policy of having the Gold Room Coordinator present was to ensure that the facilities would be used safely and appropriately. The City of Glenarden did not follow its advertised practice and allowed Carraway unfettered access with minors to the Gold Room, where he engaged in repeated acts of sexual abuse.

90. Carraway would threaten children to stop them from telling anyone about the abuse. At times, Carraway would hit or punch the children at the Municipal Center to get them to perform the sexual acts.

---

[1] City of Glenarden, "Gold Room Banquet Facility Renters Rules and Regulations", available at: http://www.cityofglenarden.org/userfiles/Gold%20Room%20Packets%20PDF/Gold%20Room%20Renters%20Rules%20and%20Regulations%20PDF.pdf.

91. In order to get the children alone, Carraway would often play hide-and-seek with them throughout the Municipal Center after choir practice. Carraway and the children would often play hide-and-seek until 9:00 or 10:00 p.m. They would play hide-and-seek in the bathrooms, the Gold Room, and other locations in the Municipal Center. On occasion, when students would be playing hide-and-seek, they would be coerced by Carraway to engage in sexual acts under the stage in the Gold Room.

92. Carraway would sometimes make it a competition between the children to perform certain sexual acts.

93. Carraway would also ask Jane Doe #6 and another female choir member if they wanted to play "butt tag" at the Municipal Center but they refused.

94. When Carraway and the children left the Municipal Center after choir practice and/or playing hide-and-seek, the doors were already locked so Carraway just had to pull the door closed for the Municipal Center to be locked for the night.

95. While in the Municipal Center, Carraway pressured and/or coerced children to engage in sexual acts with him. Carraway often recorded this criminal sexual abuse and other sexual acts of the minor children on his cell phones.

96. Carraway also pressured, coerced, and enticed children who were members of the City of Glenarden Voices of Youth Choir to perform sexual acts with each other, which he often filmed on his phones.

97. These sex acts took place openly in the Municipal Center during and immediately after choir practice, including in such open places as the Municipal Center's bathrooms and other locations on the City's property such as the Gold Room. Carraway was able to openly entice

these children to perform sexual acts openly on City property because of the complete absence of any supervision and oversight of his conduct or behavior involving these children.

98. While on City property during choir practice, Carraway enticed students to perform sexual acts on camera. Carraway filmed these sexual acts for his own gratification and with the intent to use the images of this child sexual activity for exploitative purpose. Carraway was able to exercise this control over students by virtue of his position of trust and authority as Choir Director.

99. Carraway's abuse was common knowledge among the students in the City of Glenarden Youth Choir.

### Carraway's Abuse of Students at the Zion Praise Tabernacle Lutheran Church

100.    Carraway's choir performed at the Zion Praise Tabernacle Lutheran Church, located at 6600 Laurel Bowie Road, Bowie, Maryland. Carraway and the choir also regularly spent time at the Church on weeknights and on Sundays.

101.    On Sundays, the children would attend church services in the morning and then spend time in the Church's classrooms and playrooms. These activities were largely unsupervised by adults other than Carraway.

102.    The Church's pastor frequently drove a Church van to pick up Carraway and the choir members from the Municipal Center.

103.    On multiple occasions, Carraway took certain choir members into a separate room in the Church where he recorded pornographic videos of them. He also showed the choir members pornographic videos while at the church.

### Carraway's Abuse of John Doe

104.    At all times relevant to this Complaint, John Doe was nine years old and was vulnerable to the influence of an adult authority figure such as Carraway. During school hours on school property, Carraway enticed John Doe to perform sexual acts on camera. Carraway filmed these sexual acts for his own gratification and with the intent to use the images of this child sexual activity for exploitive purposes.

105.    During the 2015-2016 school year, John Doe was in the fourth grade at Sylvania Woods.

106.    On or about January 6, 2016, Carraway called John Doe out of class and brought him to the school cafeteria to a room behind the stage. Carraway directed a fifth-grade girl, Jane Doe #6, to perform a sexual act on John Doe during school hours. Carraway told the female student that he would kill her if she told anyone. Carraway recorded this act on his cell phone. Upon information and belief, Carraway circulated the video among students by "Kik," a mobile messaging application. When Jane Doe #6 returned to class, her teacher did not ask her where she had been.

107.    This incident, which occurred in Sylvania Woods Elementary School during school hours, was described in the federal criminal case as follows:

> Count Seven: A video recorded on or about January 6, 2016, depicting Victim E, a nine-year-old male, and Victim F, an eleven-year-old female, in the Elementary School (band room). During the video, Victim E removes his pants, exposing his penis and buttocks, and Victim F performs oral sex on Victim E. CARRAWAY is partially visible in the video directing the children on where to stand and what to do. At the end of the video, CARRAWAY tells Victim E to stand in front of the camera and "do something." Victim E responds by moving in front of the camera and fondling his penis and buttocks. During the video, Victim F also refers to Carraway by his first name, "Deonte."

On January 30, 2017, Carraway entered a guilty plea in the federal case in the United States District Court for the District of Maryland related to this charge.

108.     There were at least two boys and one girl in John Doe's fourth grade class who were also preyed on by Carraway.

109.     In addition to the in-person abuse at school, Carraway sent John Doe inappropriate, sexually explicit messages on Kik.

110.     In the state criminal prosecution, the State charged Carraway in Count One with Sexual Abuse of a Minor related to Carraway's conduct in violation of Md. Code, § 3-602(b) of the Criminal Law Article toward John Doe. On September 28, 2017, Carraway pled guilty to this charge.

### Carraway's Abuse of John Doe #2

111.     During the 2015-2016 school year, John Doe #2 was a fifth grade student at Sylvania Woods.

112.     John Doe #2 was a member of Carraway's City of Glenarden Voices of Youth Choir.

113.     Beginning in approximately early 2015, Carraway coerced John Doe #2 to engage in sexual acts with him and other students at the Municipal Center on multiple occasions. Specifically, Carraway coerced John Doe #2 to engage in sexual conduct with John Doe #4 at the Municipal Center during choir practice. On one occasion, Carraway propped up his phone in the Gold Room and videotaped John Doe #2 and John Doe #4 engaged in a sexual act. On another occasion, Carraway forced John Doe #2 to engage in sexual acts with John Doe #4 in the boys' bathroom on the second floor of the Municipal Center.

114.     John Doe #2 was part of the group of students that Carraway would walk home from Sylvania Woods each day. Upon information and belief, John Doe #2 was sexually abused by Carraway immediately following Carraway walking John Doe #2 to his apartment complex

after school. Carraway repeatedly forced John Doe #2 to engage in sexual acts with Carraway and other students in private homes.

115.    Carraway would punch John Doe #2 and slap his face when he would refuse to engage in the sexual acts.

116.    Carraway also sent inappropriate, sexually explicit pictures to John Doe #2 via Kik.

117.    As a non-exhaustive list, Carraway recorded John Doe #2 and he either abused him or directed and/or facilitated abuse that occurred on the following dates: October 30, 2015; November 24, 2015; December 12, 2015; December 13, 2015; and December 14, 2015.

118.    The incident on December 14, 2015 took place in the home of John Doe #4 and was described in the federal criminal case as follows:

> Count Four: A video, recorded on or about December 14, 2015, depicting Victim A, who is nude from the waist down, and Victim C, an eleven-year-old special needs male, in Victim A's bedroom. During the video, Victim A is seated on a bed and Victim C attempts to perform oral sex on Victim A.

On January 30, 2017, Carraway entered a guilty plea in the United States District Court for the District of Maryland related to this charge.

*119.*    In the state criminal prosecution, the State charged Carraway in Count 6 with Sexual Abuse of a Minor related to Carraway's conduct in violation of Md. Code, § 3-602(b) of the Criminal Law Article toward John Doe #2, as well as 17 other counts of sex offense and child pornography. On September 28, 2017, Carraway pled guilty to Count 6.

### *Carraway's Abuse of John Doe #3*

120.    During the 2015-2016 school year, John Doe #3 was a fourth grade student at Sylvania Woods.

121.    On or about January 8, 2016, John Doe #3 reported to a fourth grade teacher, Gwendolyn McNair, that Carraway was engaging in criminal conduct.

122.    On that same day, Carraway pulled John Doe #3 out of class by telling him that Principal Williams wanted to speak with him. Carraway took John Doe #3 to the dressing room behind the stage in the auditorium. When they got there, John Doe #4 was already in the dressing room with his pants pulled down. Carraway directed John Doe #3 to pull down his pants. John Doe #3 said "no" over and over again and repeatedly told Carraway he wanted to leave.

123.    To keep John Doe #3 from leaving, Carraway took out a phone and told the student he was calling the police. Fearful of the threat, John Doe #3 complied with Carraway's demands. Carraway then directed John Doe #6 to perform a sex act with John Doe #3. Carraway propped up a different cell phone in the room and began recording. He left the room but continued to direct them from outside the door and threatened them if they stopped. Specifically, Carraway told the student that, "[i]f you pull your pants back up, I am going to tell everyone you were raping [name omitted]." Shortly after, John Doe #3 pushed open the door and ran out of the dressing room and back to class.

124.    When John Doe #3 arrived at his math class, he immediately walked up to his teacher, Gwendolyn McNair, and reported Carraway's criminal actions.

125.    In response, McNair told him, "I don't believe you. Go sit down."

126.    John Doe #6 was not in the class at this time. McNair made no attempts to locate him. McNair never spoke again with John Doe #3 about what happened or asked him any questions. She never informed his mother of what he had reported to her.

127.    Despite John Doe #3's statement to McNair that "Deonte wanted [name omitted] to hump me," Carraway was permitted to continue working at the school, pulling students out of

class, and escorting them to various locations within the school building for the purpose of sexually abusing them and recording the abuse with his cell phones.

128.     This incident occurred on or about January 8, 2016 during school hours and during the school day. The incident was described in the federal criminal case as follows:

> Count Ten: A video, recorded on or about January 27, 2016,[2] depicting Victim A and Victim H, a nine-year-old male, both nude from the waist down, in a back room in the Elementary School. During the video, CARRAWAY is partially visible placing the camera on the floor and appears to be directing Victim A and Victim H. Victim A then attempts to have anal sex with Victim H. CARRAWAY's voice can be heard in the video.

On January 30, 2017, Carraway entered a guilty plea in the United States District Court for the District of Maryland related to this charge.

129.     In the state criminal prosecution, the State charged Carraway in Count 13 with Sexual Abuse of a Minor related to Carraway's conduct in violation of Md. Code, § 3-602(b) of the Criminal Law Article toward John Doe #3. On September 28, 2017, Carraway pled guilty this charge and he did so because he is in fact guilty.

### *Carraway's Abuse of John Doe #4*

130.     During the 2015-2016 school year, John Doe #4 was in the fourth grade at Judge Sylvania Woods Elementary School, which is located at 3000 Church Street in Glenarden, Maryland 20706.

131.     John Doe #4 was a member of the City of Glenarden Voices of Youth Choir. He joined the Choir in October 2014, soon after he first met Carraway.

---

[2] The Statement of Facts in the federal criminal case that Carraway stipulated were accurate dated this charge on January 27, 2016. At sentencing, Carraway's counsel indicated that January 8, 2017 was the correct date: "I think the parties agree that on or about January 8th, sometime in January, that happened." (T. 1/30/17, at 23).

132.     Carraway coerced John Doe #4 to engage in sexual acts with other students on school property during school hours, which Carraway recorded on one of his cell phones.[3]

133.     Beginning in approximately early 2015, Carraway coerced John Doe #4 to engage in sexual acts with him and with other students at the Municipal Center on multiple occasions. Specifically, Carraway abused John Doe #4 in the bathroom and in the Gold Room. Carraway threatened John Doe #4 in order to stop him from telling his mother or anyone else about the abuse.

134.     In order to get the children alone, Carraway would play hide-and-seek with John Doe #6 and the other children throughout the Municipal Center after choir practice. They would play hide-and-seek in the bathrooms, the Gold Room, and other locations in the Municipal Center.

135.     Carraway showed John Doe #4 pornographic videos he had taken of other students. Carraway showed him these pornographic recordings in the school cafeteria during school hours.

136.     In addition to John Doe #4's interactions with Carraway at Sylvania Woods, Carraway would walk John Doe #4 and a group of approximately seven children home from Sylvania Woods every day. These were part of his job duties with the school. Carraway would frequently go into private residences with John Doe #4 and the other students upon walking them home.

137.     On multiple occasions, Carraway sexually abused John Doe #4 at private residences, at Judge Sylvania Woods Elementary School, and at Glenarden Municipal Center.

---

[3] John Doe #4 was identified as "Victim A" in the statement of facts for the federal plea agreement.

138.    For example, as a non-exhaustive list, Carraway recorded John Doe #4 and he either abused him or directed and/or facilitated abuse that occurred on the following dates: October 10, 2015; October 11, 2015; October 30, 2015; November 24, 2015; November 27, 2015; November 30, 2015; December 12, 2015; December 13, 2015; December 14, 2015; December 20, 2015; December 21, 2015; December 22, 2015; December 31, 2015; and January 8, 2016.

139.    The incident on January 8, 2016 took place in Judge Sylvania Woods Elementary School during school hours and during the school day. The incident was described in count ten of the federal criminal case as follows:

> Count Ten: A video, recorded on or about January 27,[4] 2016, depicting Victim A and Victim H, a nine-year-old male, both nude from the waist down, in a back room in the Elementary School. During the video, CARRAWAY is partially visible placing the camera on the floor and appears to be directing Victim A and Victim H. Victim A then attempts to have anal sex with Victim H. CARRAWAY's voice can be heard in the video.

On January 30, 2017, Carraway entered a guilty plea in the United States District Court for the District of Maryland related to this charge and others related to John Doe #4.

140.    Carraway pled guilty to Count 4 and 121 related to his conduct towards John Doe #4 in the state criminal prosecution.

### Carraway's Abuse of Jane Doe #6

141.    During the 2015-2016 school year, Jane Doe #6 was a fifth grade student at Sylvania Woods Elementary School.

142.    Carraway coerced Jane Doe #6 to engage in sexual acts with other students on school property during school hours, which Carraway recorded on his cell phones.

---

[4] The Statement of Facts in the federal criminal case that Carraway stipulated were accurate dated this charge on January 27, 2016. At sentencing, Carraway's counsel indicated that January 8, 2017 was the correct date: "I think the parties agree that on or about January 8th, sometime in January, that happened." (T. 1/30/17, at 23).

143.     On or about January 6, 2016, Carraway pulled Jane Doe #6 out of class and took her behind the stage in the school auditorium. He left her there while he pulled a second student, John Doe, out of class and brought him behind the stage. Carraway coerced Jane Doe #6 to engage in a sexual act with John Doe, which Carraway recorded on his cell phone. He told Jane Doe #6 that he would kill her if she told anyone. Shortly after, Jane Doe #6 ran out of the room and back to class.

144.     When she returned to class, her fifth grade teacher did not ask her where she had been.

145.     This incident, which occurred in Sylvania Woods Elementary School during school hours, was described in the federal criminal case as follows:

> Count Seven: A video recorded on or about January 6, 2016, depicting Victim E, a nine-year-old male, and Victim F, an eleven-year-old female, in the Elementary School (band room). During the video, Victim E removes his pants, exposing his penis and buttocks, and Victim F performs oral sex on Victim E. CARRAWAY is partially visible in the video directing the children on where to stand and what to do. At the end of the video, CARRAWAY tells Victim E to stand in front of the camera and "do something." Victim E responds by moving in front of the camera and fondling his penis and buttocks. During the video, Victim F also refers to Carraway by his first name, "Deonte."

On January 30, 2017, Carraway entered a guilty plea in the United States District Court for the District of Maryland related to this charge.

146.     On another occasion, Carraway pulled Jane Doe #6 out of John Doe #22's fifth grade classroom. Carraway told her that she had to engage in sexual conduct with another student and that if she did not do so she would be kicked out of choir. She refused to do it because she knew she would get in trouble so she went back to class.

147.     On multiple occasions when Jane Doe #6 was walking through the school hallways, Carraway would harass her, telling her about other students that he coerced to perform sexual acts.

148.     Carraway showed Jane Doe #6 pornographic videos he had taken of other students. Carraway showed her these pornographic recordings at school during school hours.

149.     In addition to this sexual abuse at school, Carraway sexually abused Jane Doe #6 on numerous occasions at private residences. Carraway forced her to engage in sexual conduct with him in January 2016 at a private home and he smacked her face when she told him she did not want to.

150.     As a non-exhaustive list, Carraway recorded Jane Doe #6 and he either abused her or directed and/or facilitated abuse that occurred on the following days: December 13, 2015; December 20, 2015; December 21, 2015; December 31, 2015; January 6, 2016; and January 8, 2016.

151.     Jane Doe #6 was a member of the City of Glenarden Voices of Youth Choir.

152.     Carraway coerced Jane Doe #6 to engage in sexual acts with other students at the Municipal Center on multiple occasions.

153.     Carraway also coerced Jane Doe #6 to engage in sexual acts with other choir members, which Carraway recorded, at City of Glenarden Voices of Youth choir parties, which took place at private homes.

154.     In the state criminal prosecution, the State charged Carraway in Count 121 with Possession of Child Pornography related to Carraway's conduct in violation of Md. Code, § 11-208(a)(2) of the Criminal Law Article toward Jane Doe #6. On September 28, 2017, Carraway pled guilty to Count 121 and he did so because he is in fact guilty.

### *Carraway's Abuse of John Doe #5*

155.     During the 2015-2016 school year, John Doe #5 was in the second grade at Judge Sylvania Woods Elementary School.

156.     During the 2014-2015 school year, John Doe #5 was using a urinal in a school bathroom when Carraway entered. Carraway took out his phone and recorded John Doe #5 going to the bathroom. When John Doe #5 asked Carraway what he was doing, Carraway told him that he was texting. However, John Doe #5 could tell that he was being filmed because the flash/light on the phone was on. Alternatively, this event occurred during the 2015-2016 school year,

157.     On another occasion during the 2014-2015 school year, Carraway pulled John Doe #5 and a fellow student out of their first grade class and escorted them to a school bathroom. Carraway ordered John Doe #5 and the fellow student to urinate on each other while he watched. Carraway threatened to tell the police and principal and get them suspended if they told anyone what happened.

158.     Following this incident, John Doe #5 and the fellow student went to the nurse's office to get a change of clothes. The school nurse did not question them about what had occurred nor did she notify their parents.

159.     In the state criminal prosecution, the State charged Carraway in Count 23 with Sexual Abuse of a Minor related to Carraway's conduct in violation of Md. Code, § 3-602(b) of the Criminal Law Article toward John Doe #5. On September 28, 2017, Carraway pled guilty this charge and he did so because he is in fact guilty.

### *Carraway's Abuse of John Doe #6*

160.     During the 2015-2016 school year, John Doe #6 was in the second grade at Sylvania Woods Elementary School.

161. During the 2014-15 school year, Carraway escorted John Doe #6 and three other male students from their first-grade classroom to a school bathroom.

162. Carraway unzipped and pulled down John Doe #6's pants and touched his penis. Carraway then took out his cellphone and recorded John Doe #6 using the urinal. Carraway also videotaped the other students using the urinals.

163. Carraway ordered the students to urinate on each other and John Doe #6 was urinated on. Carraway threatened that if the students did not urinate on each other, he was going to tell the principal and get them suspended.

164. Carraway committed these lewd acts for his own sexual gratification.

165. Carraway threatened the children not to tell anyone what Carraway did or they would get expelled.

166. Immediately after this incident, John Doe #6 spoke with a school counselor about what had occurred. John Doe #6 told the counselor that, "Deonte was taking pictures and telling people to pee on each other." The counselor responded, "I'll deal with it. Go back to class."

167. Nothing happened to Carraway as a result of this report.

168. John Doe #6 received a one day out-of-school suspension and a one day in-school suspension based on what Carraway told administrators happened in the bathroom.

### Carraway's Abuse of John Doe #8

169. During the 2015-2016 school year, John Doe #8 was in the fifth grade at Sylvania Woods Elementary School. He had attended Sylvania Woods since pre-kindergarten in 2009.

170. Prior to the events alleged herein, John Doe #8 was a bright and thriving boy who has even received the Presidential Award at Sylvania Woods during his second grade year.

171.     Plaintiff John Doe #8 was a member of Carraway's City of Glenarden Voices of Youth Choir.

172.     Beginning in the 2014-2015 school year, when John Doe #8 was ten years old and in the fourth grade, Carraway began to groom John Doe #8 by targeting him for preferential treatment and attention including bringing John Doe #8 drinks and sandwiches at school.

173.     Carraway removed John Doe #8 from class on at least one occasion during the 2015-2016 school year, stating he needed John Doe #8 for a "recital."

174.     Carraway began to show John Doe #8 pornographic videos, including videos of his classmates engaging in sex acts, while John Doe #8 was in the school cafeteria.

175.     Carraway also showed him videos of simulated sex acts by two students at school.

176.     Carraway coerced John Doe #8 to observe videos of sexual acts with students at Sylvania Woods during lunch in the cafeteria.

177.     One day, while John Doe #8 was in the cafeteria waiting for students to be dismissed to walk home from school, Carraway sexually abused John Doe #8 when Carraway sat down next to him, put his hand on John Doe #8's thigh, and touched John Doe #8's penis over his pants.

178.     In addition to this abuse at school, the Statement of Facts to Carraway's federal plea agreement described an incident of abuse involving the minor Plaintiff on October 30, 2015 as follows:

> Count Two: A video, recorded on or about October 30, 2015, depicting Victim B, an eleven-year-old male, and CARRAWAY, both of whom were nude from the waist down, on a bed in Victim B's bedroom. During the video, Victim B is positioned on all-fours on the bed with his buttocks exposed. CARRAWAY then begins to have anal sex with Victim B.

On January 30, 2017, Carraway entered a guilty plea in the United States District Court for the

District of Maryland related to this charge.

179.     Also, on or about January 2016, Carraway forced John Doe #8 to have intercourse with Jane Doe #6 in his bedroom.

180.     Carraway threatened John Doe #8 that if he ever refused to engage in the sexual acts or told anyone about them, Carraway would shoot him. One such threat occurred on school property.

181.     Carraway also provided John Doe #8 with a cellular phone and required John Doe #8 to both send and receive inappropriate, sexually explicit pictures to John Doe #8 via Kik.

182.     Carraway also abused John Doe #8 at the Glenarden Municipal Center.

183.     John Doe #8's parents removed him from the choir on or about December 2015 as Carraway was not escorting him home until very late in the evening. Jane Doe #11 asked Carraway to stop coming by their home but later learned that he was still frequenting the homes of John Doe #8's classmates while John Doe #8 was visiting their homes.

184.     John Doe #8's parents were contacted by the Prince George's County police department and the Federal Bureau of Investigations on or about February 5, 2017 and first learned that John Doe #8 was the victim of this abuse during those meetings with law enforcement.

185.     In the state criminal prosecution, the State charged Carraway in Count 5 with Sexual Abuse of a Minor related to Carraway's conduct in violation of Md. Code, § 3-602(b) of the Criminal Law Article toward John Doe #8. On September 28, 2017, Carraway pled guilty to this charge and he did so because he is in fact guilty.

186.     There are numerous other incidents of sexual abuse, some of which were videotaped, involving John Doe #8. Specifically, an incident of videotaped abuse involving John

Doe #8 occurred on October 29, 2015, which relates to Counts 75 and 76 in the state court indictment.

187. Another incident of videotaped abuse occurred on October 29, 2015 involving John Doe #8, which relates to Counts 186 to 190 in the state court indictment.

188. An incident of videotaped abuse occurred on November 27, 2015 involving John Doe #8 and John Doe #4, which relates to Counts 40 through 48 in the state court indictment.

189. Another incident of videotaped abuse occurred on December 11, 2015 involving John Doe #8, which relates to Counts 171 through 175 in the state court indictment.

190. Throughout this period of repeated sexual abuse, John Doe #8 would see Carraway at school where Carraway would harass, intimidate, and threaten him, creating a negative educational environment that denied the minor Plaintiff education opportunities.

191. John Doe #8's repeated exposure to his abuser at school created a hostile environment wherein John Doe #8 was vulnerable to further abuse and harassment.

192. John Doe #8 was severely traumatized by the abuse and harassment he endured, including suffering suicidal ideation.

193. As a direct and proximate result of Defendants' actions, Plaintiffs suffered damages, including but not limited to, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity, and insult. John Doe #8 was deprived of equal access to his education and educational opportunities. His ability to participate in his education was negatively affected by Defendants' actions and he will require educational assistance in the future. Plaintiff John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a result of

this abuse. The damages John Doe #8 has suffered are profound, permanent, and will result in a lifetime of suffering.

### The Board and Principal Williams' Knowledge of Carraway's Abuse

194.    The Board of Education had actual knowledge of Carraway's criminal conduct.

195.    Carraway's abuse was common knowledge among the students at Sylvania Woods Elementary School.

196.    Parents and teachers at Sylvania Woods Elementary School had expressed concern and/or raised issues about Carraway's predatory behavior to Principal Michelle Williams, but she took no action.

197.    Principal Williams and other school officials ignored complaints from faculty, students and parents about Carraway's behavior, although knowing full well and having notice that he was behaving in seriously inappropriate ways with the school children at Sylvania Woods

198.    In 2015, a then-fourth grade student, Jane Doe #10, went to the principal's office at Judge Sylvania Woods Elementary School and told Principal Williams that she needed to check Deonte Carraway's phone because he had nasty things with kids on it. In response, Principal Williams just said "Ok." She did not ask the student any additional questions, conduct an investigation, or notify the student's mother about what she had said. Jane Doe #10 made a similar report to the Vice Principal.

199.    The student asked Principal Williams if she believed the student and Principal Williams said that she did not believe Carraway was making "nasty videos" because he has a "clean record."

200. On several other occasions, that student tried to talk to the Principal or assistant principal about Carraway's phone but the Principal or assistant principal was always too busy to meet with her.

201. By June 2015, Carraway's behavior with students had become so inappropriate that Principal Williams met with him and warned him about his inappropriate behavior and formally counseled him not to repeat this behavior. On June 15, 2015, Principal Williams sent the following email to Carraway:

> Good afternoon,
>
> This is a follow up to our conversation held last week. During our conversation we discussed the importance of using good judgment when interacting with students.
>
> You were advised to only engage students in conversations in areas that are in plain view of the public. This practice will ensure that actions or conversations that could be deemed inappropriate do not take place.
>
> If you have any further questions or concerns please contact me directly.
>
> Michelle Williams
> Principal
> Judge Sylvania Woods ES

202. But Carraway continued to engage in inappropriate behavior openly with students throughout the building and elsewhere, despite continued complaints by students and teachers of his inappropriate behavior.

203. Although complaints about Carraway continued to mount from faculty, students and parents, Principal Williams ignored them and continued to support Carraway, giving him unfettered access to the students and its facilities, despite almost constant complaints about his inappropriate conduct.

204.     Principal Williams was well aware of Carraway's misconduct and the serious risk and jeopardy he was placing the students in.  In 2015, sixth-grader, John Doe #18, asked his teacher to use the boys' bathroom in the school.  When he got out of the stall, Carraway was waiting for him and began recruiting him to join his choir, including handing him a paper about the choir.  At that point, Board Employee #43, a school counselor, saw Carraway in the bathroom with Jon Doe #18 and reported the situation to Principal Williams. Principal Williams questioned the student as to why he was in the bathroom with Carraway, and John Doe #18 responded that he was "getting a paper about the choir."  Principal Williams warned John Doe #18 "don't do it again because he could touch you."

205.     Upon information and belief, a Sylvania Woods student, John Doe #17, who was abused by Carraway behind the stage in the school cafeteria, told a school counselor, Board Employee #43, in late December 2015 or early January 2016 and a teacher, Board Employee #56, about Carraway's behavior.

206.     John Doe #6 also reported to the school counselor, Board Employee #51, that, "Deonte was taking pictures and telling people to pee on each other." While the counselor responded, "I'll deal with it," no investigation was ever done.

207.     John Doe #12 informed a fifth grade teacher, Board Employee #23, that Carraway showed him pornographic videos on his phone. Board Employee #23 confronted Carraway and asked him if that was true and Carraway denied it. Nothing further happened.

208.     On or about January 8, 2016, a fourth grade student, John Doe #3, reported to Gwendolyn McNair that "Deonte wanted [name omitted] to hump me." McNair did not take John Doe #3's report seriously and did not tell the Principal about the report, notify CPS, or notify John Doe #3's mother.

209.     Carraway acted so inappropriately with students that a teacher, Board Employee #58, complained to Principal Williams and the school administration about his conduct. The school administration did nothing. Board Employee #58 stated she did not want Carraway to be in the cafeteria during her lunch shift because of his inappropriate conduct with students and she told him to stay away from her lunch shift. Another school employee, Board Employee #49 made similar complaints to Assistant Principal Donna Smith about Carraway.

210.     Carraway's inappropriate touching and physical abuse of students was also repeatedly reported to Principal Williams and other administrators.

211.     Fifth-grade student John Doe #19 told Principal Williams that Carraway assaulted him while Carraway was walking him home as part of the walk home program. Principal Williams did nothing about it.

212.     Board Employee #44, a teacher, reported Carraway to Principal Williams and/or other administrators repeatedly for his inappropriate behavior with students. This inappropriate behavior included touching, inappropriate conversations, and efforts to develop inappropriate relationships with the students. The administrators repeatedly promised to do something about it, saying, "I will talk with him," but then continued to do nothing and allowed Carraway to continue his inappropriate touching and contact with the students. Board Employee #44 observed that Principal Williams "completely disregarded" her repeated complaints about Carraway.

213.     While Board Employee #44 intervened because she heard Carraway having inappropriate conversations with students, Carraway's conduct continued because Principal Williams permitted it and ignored the complaints.

214.     Other teachers at Sylvania Woods complained to the administration, specifically Principal Williams, Assistant Principal Smith, and the special education supervisor Ms. Mobley, about Carraway's inappropriate conduct and contact with students. These teachers included Board Employee #32, Board Employee #49, Board Employee #40, and Board Employee #23 .

215.     Board Employee #42, a school counselor, frequently observed Carraway's inappropriate behavior throughout the school building, describing it as "inappropriate," "unprofessional" and "oblivious to the teacher instructing" in the classroom. This included "horse play in the halls," "riling kids up," "distracting kids in the classroom" and acting like a kid himself. While this behavior was obvious for the entire building to see, Principal Williams and the administration did nothing about this.

216.     On December 18, 2015, a teacher, Board Employee #40, complained to Principal Williams about Carraway, including his lack of professional conduct and being involved in drama with the students. The teacher wrote in an email to Principal Williams:

Good Afternoon,

I just wanted to follow-up on our conversations about Deonte Carraway.

Concerns:

1. Involved in he/she say drama with elementary aged students.

2. He is inciting students to talk about each other and encouraging fighting.

3. He is not acting as a professional within the school setting.

Thank you for your prompt response to this matter.

217.     Principal Williams did nothing in response to this complaint, which occurred six months after she had formally counseled Carraway. She continued to allow him unlimited access to students and facilities, which he used to sexually abuse students.

218.     Despite these complaints, Principal Williams and the administration continued to allow Carraway to have unfettered access to the school students and facilities. For instance, Carraway would frequently walk in and out of first grade teacher Board Employee #7's classroom as he pleased. One day, while Board Employee #7 was getting coffee, Carraway told the class to "take their clothes off" and he would take a picture. One student, Jane Doe #14 reported this to teacher Board Employee #7 who simply ignored her and did nothing about this.

219.     Principal Williams and the administration continued to ignore the complaints about Carraway and empowered Carraway to have complete access to all students and facilities without being accountable to anyone, and Carraway's conduct in the school building became more flagrant.

220.     Principal Williams refused to take any action because, despite having notice, she claimed the teachers had "no proof" of Carraway's actions. A mother of another student was in the Sylvania Woods' office before Carraway was arrested and heard Principal Williams instruct certain staff that, if parents call the office about Carraway's conduct, tell them "we don't have proof" and "it's a rumor."

221.     Parents also raised concerns about Carraway's other unprofessional behaviors. During the 2014-2015 school year, one parent expressed concern to a school secretary that Carraway regularly came to school in his pajamas. The secretary brushed off her comment.

222.     Upon information and belief a teacher, Board Employee #20, reported to Sylvania Woods administrators that it was strange that Carraway would carry candy around in his backpack to give out to students.

223.     Carraway posted inappropriate pictures on Instagram which were observed by teachers. A fourth grade teacher, Board Employee #20 believed that Carraway was "creepy" and spoke with him about his inappropriate words and actions in the school building.

224.     On one occasion, a new teacher, Board Employee #56, had left students with behavioral problems in Carraway's custody. Board Employee #20 was so concerned for the students' safety that she immediately went to retrieve them from Carraway.

225.     The administration knew or should have known about Carraway's predatory conduct, but Principal Williams and the Board failed to remove him from the school in a timely manner.

226.     Agents of the Board failed to promptly report these concerns in violation of Maryland law with respect to promptly reporting sexual abuse as required by Md. Code, § 5-704 of the Family Law Article.  F.L. § 5-704 requires educators, among others, to notify the appropriate authorities "as soon as possible" and submit a "written report" within 48 hours if the educator has "reason to believe that a child has been subjected to abuse or neglect."

227.     The Board is liable under Title IX. Claims for damages based on sexual harassment by a teacher can arise under Title IX if (1) "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [funding] recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond," and (2) the inadequate response "amount[s] to deliberate indifference to discrimination." *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1988).

*John Doe's Family Makes a Report to the Sylvania Woods Administration*

228.     In January 2016, John Doe's (Sean Smith) uncle discovered that Carraway had been communicating with John Doe and other children on Kik, which allows individuals to anonymously send messages, photographs, and videos. John Doe's uncle, who periodically checks John Doe's phone, saw on his cell phone that there were inappropriate pictures of students that were sent through Kik. John Doe's uncle saw that Carraway was requesting that John Doe send a picture of his buttocks to be part of a group and that Carraway was instructing John Doe to delete their messages.

229.     John Doe's uncle and Jane Doe made a report to the administration at Sylvania Woods Elementary School about the inappropriate pictures and messages from Carraway. On February 4, 2016, they met with Assistant Principal Donna Smith and Principal Michelle Williams and showed them the photographs on John Doe's phone. Principal Williams told John Doe's uncle and Jane Doe to return to the school the next day for another meeting.

230.     That night, John Doe's uncle contacted the Prince George's County Police Department about the pictures and messages.

231.     Following the meeting with John Doe's uncle, Principal Williams sent a PS60— Prince George's County Public School Child Abuse Reporting Form—to Child Protective Services. When CPS asked Principal Williams what Carraway's relationship was with John Doe, she replied that Carraway was an adult male who lives in the neighborhood and that he used to be an employee at the school last year. When asked by CPS if Carraway was currently on staff at the school, Principal Williams stated that Carraway was not currently at the school.

232.     Principal Williams misled the Child Protective Services investigator that "he used to be an employee of the school last year," not disclosing the fact Carraway was a regular volunteer teacher's aide who carried school credentials reflecting that he was "Faculty/Staff." It

was later learned from the Prince George's County Police that in fact, Carraway was functioning as a volunteer teacher's assistant.

233.     On February 5, 2016, the Police Department learned that John Doe #4 had been directed by Carraway to send sexually-explicit pictures to Carraway. The Police Department interviewed John Doe #4 and, after the interview, recovered a backpack from his mother's house that Carraway had left on a recent visit. The police obtained a search warrant and located a cell phone inside, which they subsequently searched.

234.     Upon initiating an investigation, Prince George's County Police Department discovered four SIM cards from Carraway's mobile phone. On just one of the SIM cards, there were at least 44 recordings of sexual acts involving children.

235.     In some of the recordings, Carraway can be seen or heard directing the children to perform certain sexual acts.

236.     Upon information and belief, one of the recordings is of a child performing a sexual act on Carraway in a school bathroom while he recorded the act on his cell phone.

237.     At the time of his arrest, Carraway had at least 50 images and videos of child pornography on his phone, including of Carraway engaged in sexual acts with children, children engaged in sexual acts with others at his direction, and children engaged in sexually explicit conduct at Carraway's direction.

238.     Upon information and belief, the obscene recordings on Carraway's phone range from eight-second clips to videos running over a minute.

239.     Upon information and belief, the recordings have been made since at least late 2014 and continued until Carraway's arrest on February 5, 2016.

### *Carraway's Arrest and Prosecution*

240.     On or about February 5, 2016, as a result of this criminal sexual child abuse, Carraway was arrested and charged with ten counts of felony child pornography in violation of Md. Code, § 11-207 of the Criminal Law Article, one count of sexual abuse of a minor in violation of Md. Code, § 3-602 of the Criminal Law Article, and one count of second-degree sex offense in violation of Md. Code, § 3-306 of the Criminal Law Article. *See State v. Deonte Lavell Carraway*, Case No.: 5E00605015 (District Court of Maryland for Prince George's County).

241.     On February 29, 2016, Carraway was indicted in the United States District Court for the District of Maryland on 13 counts of violating 18 U.S.C. § 2251(a). *See United States v. Carraway*, DKC-16-cr-0070. On November 14, 2016, a grand jury returned a superseding indictment on 15 counts of violating 18 U.S.C. § 2251(a).

242.     On June 28, 2016, a grand jury in the Circuit Court for Prince George's County indicted Carraway on 270 counts of sex abuse of a minor, sex offenses, and child pornography as to 23 minors.

243.     On January 24, 2017, Carraway signed a plea agreement to the federal charges, admitting "that he is, in fact, guilty of these offenses," referring to counts one through fifteen of the superseding federal indictment. Carraway further agreed that "a sentence of not less than 60 years and not more than 100 years of imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case."

244.     Carraway pled guilty to the following federal charges:

| Count | Date of Recording | Students Involved | Location of Recording |
|-------|-------------------|-------------------|----------------------|
| Count One | October 11, 2015 | John Doe #6 | Private home |
| Count Two | October 30, 2015 | John Doe #8 | Private home |

| | | | |
|---|---|---|---|
| Count Three | November 25, 2015 | John Doe #6 | Private home |
| Count Four | December 14, 2015 | John Doe #2 and John Doe #6 | Unknown |
| Count Five | December 22, 2015 | John Doe #6 | Private home |
| Count Six | December 22, 2015 | John Doe #6 and John Doe #14 | Private home |
| Count Seven | January 6, 2016 | John Doe and Jane Doe #6 | Judge Sylvania Woods Elementary School |
| Count Eight | January 8, 2016 | Jane Doe #6 and John Doe #10 | Private home |
| Count Nine | January 8, 2016 | Jane Doe #6 and John Doe #10 | Private home |
| Count Ten | January 8, 2016 | John Doe #3 and John Doe #6 | Judge Sylvania Woods Elementary School |
| Count Eleven | January 10, 2016 | Unknown | Unknown |
| Count Twelve | January 14, 2016 | Unknown | Unknown |
| Count Thirteen | January 27, 2016 | John Doe #11 | Unknown |
| Count Fourteen | January 27, 2016 | Unknown | Unknown |
| Count Fifteen | February 1, 2016 | Unknown | Unknown |

245. On August 21, 2017, Carraway was sentenced to 75 years in federal prison. On September 28, 2017, Carraway pled guilty in the Circuit Court for Prince George's to 23 counts of child sex abuse and pornography. His plea included one charge for every child he abused.

Carraway was sentenced to 395 years, suspending all but 100 years with credit for 601 days served, to run concurrent to the federal sentence.

### *The School System's Lack of Accountability and*
### *Practice of Failing to Comply with Reporting Requirements*

246.    The Board of Education failed to adopt, implement, and practice effective policies and procedures that would have prevented Carraway from sexually abusing and exploiting students.

247.    Prince George's County Public Schools have systemic practices of failing to control classrooms and other rooms within schools, including Judge Sylvania Woods Elementary School, during the school day to ensure that teachers or staff members do not sexually harass or sexually abuse students in the school. This includes permitting Carraway from having unsupervised access to areas of the school during the school day and permitting him to sexually abuse students or videotape students in areas of the school such as behind the stage, in closets, in bathrooms, and other locations.

248.    Prince George's County Public Schools have systemic practices of failing to properly follow mandatory reporter requirements. Agents of the Board failed to promptly report these concerns in violation of Maryland law with respect to promptly reporting sexual abuse as required by Md. Code, § 5-704 of the Family Law Article.  F.L. § 5-704 requires educators, among others, to notify the appropriate authorities "as soon as possible" and submit a "written report" within 48 hours if the educator has "reason to believe that a child has been subjected to abuse or neglect."  Specifically, employees of Prince George's County Public Schools follow a practice that violates the law because employees do not make reports unless and until they have personal knowledge of abuse and neglect.

249.     The Board failed to effectively monitor and supervise Carraway and he took advantage of this lax environment by sexually abusing and exploiting students during the school day during school hours. Had the Board provided effective supervision, it would have detected that Carraway was sexually abusing students on school property.

250.     The Board failed to adopt and implement reasonable policies that prevented teacher's assistants like Carraway to pull students out of classrooms.

251.     Prior to Carraway's conduct, the Board of Education had actual knowledge that sex abuse by teachers is a serious problem in Prince George's County Public Schools, and it has failed to institute and/or follow effective policies or practices to address this systemic problem of sexual abuse. By way of example, between 2004 to 2010, five teachers and staff members at Charles H. Flowers High School were charged and pled guilty to sex offenses with minor students.

252.     Following Carraway's arrest, in February 2016, Prince George's County Public Schools Commissioner Kevin Maxwell commissioned a task force to examine the school district's policies and procedures related to safety of students.

### COUNT I
### Violation of 42 U.S.C. § 1983
### (Plaintiffs v. Defendants Williams and Carraway)

253.     Plaintiffs sue Defendants Williams and Carraway for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

254.     This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiffs by the Fourth and Fourteenth Amendment to the United States Constitution.

255.     At all relevant times, Carraway worked as a teacher's assistant for Defendant Board.

256.     Based on the allegations above, Carraway, acting individually and in his official capacity as an agent of Sylvania Woods Elementary School, acted under color of state law and deprived John Doe #8 of clearly established rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

257.     Defendants' actions deprived John Doe #8 of his right under the Fourteenth Amendment to bodily integrity and personal security.

258.     Defendants' actions deprived John Doe #8 of his right under the Fourteenth Amendment to be free from sexual abuse and/or sexual exploitation by public school employees and/or agents.

259.     Defendants' actions deprived John Doe #8 of his rights under the Fourteenth Amendment to be free from a deprivation of liberty without due process of law.

260.     Based on the widespread problem of sexual abuse and/or exploitation of students by Carraway at Sylvania Woods Elementary School, before, during, and after the abuse suffered by John Doe #8, Defendants have established customs and/or polices that failed to supervise employees from violating the constitutional rights of students, including the students' rights to be free from unreasonable searches and seizures, the right to bodily integrity, and the right to personal security.

261.     Further, based on the widespread problem of sexual abuse by Carraway at Sylvania Woods Elementary School, Defendants have established customs and/or polices that fail to detect and/or investigate incidents of employee sexual abuse or exploitation of students. This includes, but is not limited to, the failure to thoroughly investigate claims of abuse, the

failure to supervise teachers and staff, and the policy of permitting teaching assistants to pull students out of class.

262.     Defendants' actions demonstrated a deliberate indifference and/or tacit approval of the sexual abuse and sexual exploitation of students by Carraway.

263.     Defendants have followed these unconstitutional policies and customs with respect to John Doe #8's treatment and the treatment of other Prince George's County Public School students.

264.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning

criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; and (F) Awarding such other relief as the Court deems just and proper.

## COUNT II
### Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681
### (Plaintiffs v. Defendant Board of Education)

265.     Plaintiffs sues the Board of Education for cause, claim, damages, and hereby adopts and incorporates by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

266.     20 U.S.C. § 1681(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"

267.     Defendant Board operates Sylvania Woods Elementary School and receives federal funding.

268.     As an agent of Sylvania Woods, Carraway had access to and the authority to control John Doe #8.

269.     Defendants Board and Williams had substantial control over Carraway, his access to students, his power over students, and the school property.

270.     If not for Carraway's role as agent of Sylvania Woods Elementary, and the power accorded to him by Sylvania Woods, Carraway would not have had access to John Doe #8. Carraway used his position at Sylvania Woods to gain access to John Doe #8, to cultivate an inappropriate relationship with John Doe #8, and to intimidate and threaten John Doe #8.

Defendants Board and Williams exposed John Doe #8 to this sexual harassment and made him vulnerable to sexual abuse.

271.     John Doe #8 suffered repeated sexual abuse, and/or sexual exploitation in the form of sexual advances, offensive touching, illegal sexual contact, and sexual exploitation for the purpose of producing a recording of the conduct off school property and for Carraway's own gratification.

272.     Carraway sexually abused John Doe #8 both on school property when he touched his penis and off school property. Moreover, John Doe #8 suffered sexual harassment and abuse while on school property during school hours which rendered him vulnerable to further abuse including being threatened that he would be shot if he ever refused to comply with a request of Carraway's sexual advances, and being forced to watch videos of his classmates engage in sexual activity.

273.     Carraway would threaten John Doe #8 that if he refused to comply with the sexual abuse, or if he told anyone, Carraway would "shoot him." John Doe #8 had to return to school each day where his abuser had control over him, knowing that his life had been threatened and at any time he may be threatened with violence and forced to engage in sexual acts.

274.     Carraway would force John Doe #8 to watch sexually explicit content, both recorded and in person, while on school property during school hours.

275.     The sexual harassment, sexual abuse, and/or sexual exploitation created a hostile, abusive, intimidating, and offensive educational environment at Sylvania Woods Elementary School. This hostile and abusive environment affected John Doe #8's ability to participate in school and negatively impacted his psychological well-being.

276.     The sexual harassment, sexual abuse, and/or sexual exploitation deprived John

Doe #8 of equal access to his education and educational opportunities, and it had a negative effect on his ability to participate in his education.

277. Sylvania Woods teachers and students expressed concern and raised issues to the administration about Carraway's predatory behavior, but the Board failed to take any meaningful investigation. The Board knew or should have known of Carraway's sexual harassment and abuse. Despite this actual or constructive knowledge, the Board and its agents were deliberately indifferent and/or tacitly approved of this conduct by failing to take any meaningful action, failing to investigate, failing to deter, failing to supervise, and permitting a teacher's assistant to pull students out of class.

278. Principal Williams was told by a fourth-grade student that she needed to check Deonte Carraway's phone because he had nasty things with kids on it. In response, Principal Williams just said "Ok." She did not ask the student any additional questions, conduct an investigation, or notify the student's mother about what she had said.

279. In addition to this direct reporting in or around December 2014, the Board knew and was deliberately indifferent to Carraway's sexual harassment and abuse because of his widespread use of school facilities during the school day for sexual abuse without any oversight, and also because of the following:

- On June 15, 2015, Principal Williams sent an email to Carraway reprimanding and/or counseling him regarding his inappropriate behavior around students and warning him not to repeat this behavior. She advised him to only meet with students that are in plain view of the public.

- In 2015, a sixth-grader, John Doe #18, encountered Carraway waiting for him in a school bathroom to recruit him to join his choir. A school counselor, Board Employee #43, saw Carraway in the bathroom with the student and reported the incident to Principal Williams. Principal Williams warned the student "don't do it again because he could touch you."

- On or about January 8, 2016, John Doe #3, after returning from being called out of class and sexually abused, reported to Gwendolyn McNair that "Deonte wanted [name omitted] to hump me." McNair did not tell the Principal, notify CPS, or notify John Doe #3's mother about his report.

- A student who was abused behind the stage in the school cafeteria told a counselor, Board Employee #43, in late 2015 or early January 2016, and a teacher, Board Employee #56, about Carraway's behavior.

- John Doe #6 reported to a school counselor that, "Deonte was taking pictures and telling people to pee on each other." The counselor responded, "I'll deal with it," but no investigation was conducted.

- John Doe #12 told a fifth grade teacher, Board Employee #23, that Carraway showed him pornographic videos on his phone. Carraway denied this when Board Employee #23 confronted him. No investigation occurred.

- The special needs student that Carraway was assigned to during the 2014-15 school year reported to Principal Williams that Carraway had been pinching her.

- Carraway acted so inappropriately with students that multiple teachers reported to Principal Williams and/or Assistant Principal Smith about Carraway's touching, inappropriate conversations, immaturity, and inappropriate relationships with students. These employees included: Board Employee #23, Board Employee #32, Board Employee #40, Board Employee #44, Board Employee #49, and Board Employee #58.

- The two teachers that Carraway was assigned to work with in Fall 2015, Board Employee #33 and Board Employee #56, reported to Assistant Principal Smith that they did not want Carraway in their classrooms and did not feel comfortable having him in their classrooms.

- On December 18, 2015, a teacher, Board Employee #40, emailed Principal Williams a complaint about Carraway's lack of professional conduct, inciting students to fight each other, and being involved in drama with the students.

- John Doe #19 reported to Principal Williams that Carraway assaulted him while Carraway walked him home from school as part of the walk home program.

- A parent reported to Principal Williams and Mobley that Carraway had made the inappropriate comment, "you suck on your mom's titties" to her second grade son when walking him home as part of the walk home program. The administration's response was to blame the second grade student for allegedly making an inappropriate comment in response and to pull the student and his brother out of class 15 minutes early so they would avoid interacting with Carraway.

280.     Principal Michelle Williams, Assistant Principal Donna Smith, CSEP coordinator (and Carraway's direct supervisor) Kathleen Mobley, teacher Gwendolyn McNair, and others to be identified in discovery constituted appropriate persons under Title IX because they each held sufficient authority to take corrective action to end the discrimination and abuse.

281.     Carraway's conduct, the Board's conduct in facilitating access to and power over students, the Board's indifference to the severity of Carraway's conduct, the Board's outright rejection and refusal to take action about his conduct "is so severe, pervasive, and objectively offensive, and…so undermines and detracts from the victim['s] educational experience, that the victim-student[s] [is] effectively denied equal access to an institution's resources and opportunities."

282.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation; (E) Awarding Plaintiffs equitable and injunctive relief

compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; and (F) Awarding such other relief as the Court deems just and proper.

## COUNT III
### Violation of Md. Const. Art. VIII, § 1
### (Plaintiffs v. Defendant Board)

283.    Plaintiffs sue the Board of Education for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

284.    Md. Const. Art. VIII, § 1 guarantees a thorough and efficient public school education to children in Maryland. It provides as follows: "The General Assembly, at its First Session after the adoption of this Constitution, shall by Law establish throughout the State a thorough and efficient System of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance."

285.    John Doe #8 attended a public school in Maryland, Judge Sylvania Woods Elementary School, and John Doe #8 suffered sexual abuse by an agent of the Board of Education.

286.    This sexual abuse denied John Doe #8 the right to a thorough and efficient public school education guaranteed by Md. Const. art. VIII, § 1 because the Board adopted a policy,

procedure, and practice of inaction in response to Carraway's widespread sexual abuse, and because the Board created an environment which resulted in the deprivation of Plaintiff's constitutional right to a public education.

287.     As a direct and proximate result of the Defendant Board's violation of John Doe #8's rights under Md. Const. art. VIII, § 1, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of

keeping a written record of all complaints that are made about an employee or volunteer; and (F) Awarding such other relief as the Court deems just and proper.

## COUNT IV
### Violation of Article 24 of the Maryland Declaration of Rights
### (Plaintiffs v. Defendants Board of Education and Carraway)

288.     Plaintiffs sue the Board of Education, City of Glenarden, and Carraway for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

289.     Article 24 of the Maryland Declaration of Rights guarantees children the right to bodily integrity, personal security, the right to be free from sexual abuse and/or sexual exploitation, and to be free from a deprivation of liberty without due process of law.

290.     As detailed above, Defendants' actions deprived John Doe #8 of his rights under Article 24 of the Maryland Declaration of Rights to bodily integrity and personal security, to be free from sexual abuse and/or sexual exploitation by an agent of the City, and to be free from a deprivation of liberty without due process of law.

291.     Carraway coerced John Doe #8 to engage in sexual acts with Carraway and with other students, which Carraway recorded on his cell phone.

292.     Carraway also distributed obscene recordings and images to John Doe #8 and other students at Sylvania Woods and at the Municipal Center.

293.     Beyond Carraway's sexual abuse, the Board also adopted policies, patterns, and/or practices of inaction that facilitated Carraway's abuse of John Doe #8 and others.

294.     Carraway, an agent of the school, engaged in a clear and persistent pattern of sexual abuse of students.

295.     Defendant Board had notice of this abuse as described above.

296.     Defendants tacitly approved of the unconstitutional conduct and displayed deliberate indifference reflecting Defendants' failure to act amounted to an official policy of inaction.

297.     Specifically, despite having notice of Carraway's harassment and/or abuse, Defendant Board did nothing to stop this abuse. The Board's negligent hiring of Carraway, its decision to allow him to have unfettered access to students in the school building, and its decision to ignore repeated complaints about his conduct resulted in deprivation of Plaintiffs' rights under the Maryland Declaration of Rights and the Maryland Constitution.

298.     Defendant Board's policy, pattern, and/or practice of inaction was the moving force behind the constitutional deprivation.

299.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

300.     At all times relevant hereto, Defendants acted with ill-will and malice. In doing the foregoing acts, Carraway was working as an agent of the Board and under the color of state law.

301.     Defendant Board is vicariously liable for Defendant Carraway's violations of John Doe #8's rights under Article 24 of the Maryland Declaration of Rights.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as

follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation, including expert witness fees; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

## COUNT V
### Violation of Article 26 of the Maryland Declaration of Rights
### (Plaintiffs v. Defendants Board of Education and Carraway)

302.     Plaintiffs sue the Board of Education and Carraway for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

303.     Article 26 of the Maryland Declaration of Rights guarantees the right to be free from unlawful search or seizure, loss of liberty, and the right to bodily integrity.

304.     As detailed above, Defendants' actions deprived John Doe #8 of his rights under Article 26 of the Maryland Declaration of Rights, including, but not limited to freedom from unlawful search or seizure, loss of liberty, and the right to bodily integrity.

305.     Carraway coerced John Doe #8 to engage in a sexual acts with Carraway and with other students, which Carraway recorded on his cell phone.

306.     Beyond Carraway's sexual abuse, the Board also adopted policies, patterns, and/or practices of inaction that facilitated Carraway's abuse of John Doe #8 and others.

307.     Carraway, an agent of the school, engaged in a clear and persistent pattern of sexual abuse of students.

308.     Defendant Board had notice of this abuse as described above.

309.     Defendant Board tacitly approved of the unconstitutional conduct and displayed deliberate indifference reflecting that the Board's failure to act amounted to an official policy of inaction.

310.     Specifically, despite having notice of Carraway's harassment and/or abuse, Defendant Board did nothing to stop this abuse.

311.     Defendants' policies, patterns, and/or practices of inaction was the moving force behind the constitutional deprivation.

312.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John

Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

313.     At all times relevant hereto, Defendant Carraway acted with ill-will and malice.

314.     In doing the foregoing acts, Defendant Carraway was working as an agent of the Board and under the color of state law.

315.     Defendant Board is vicariously liable for Defendant Carraway's violations of John Doe's rights under Article 26 of the Maryland Declaration of Rights.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation, including expert witness fees; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

## COUNT VI
### Negligent Hiring, Supervision, and Retention

**(Plaintiffs v. Defendant Board of Education)**

316.     Plaintiffs sue the Board of Education for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

317.     Defendant Board owed Plaintiffs a duty to use reasonable care to hire, supervise, and retain competent employees, teachers' assistants, dedicated aides, and other individuals present on school grounds.

318.     Defendant Board hired Carraway as a dedicated aide in November 2014, and he continued in this position until September 2015. The Board thereafter allowed Carraway to volunteer at the school every day as a teacher's aide on an unpaid basis until Carraway's arrest on February 5, 2016.

319.     Defendant Board breached its duty of hiring a competent employee by hiring Carraway, who lacked sufficient qualifications, temperament, and background to work with and supervise elementary age children.

320.     Defendant Board further breached this duty by hiring Carraway as a dedicated aide without obtaining two required references for him. The only reference the Board received— which was after Carraway had already started at the school—was from his supervisor, Kathleen Mobley.

321.     Carraway sexually abused students, coerced students to engage in sexual acts with each other, and recorded the sexual abuse on school property during school hours beginning in early 2015, if not before.

322.     Prior to the sexual abuse and exploitation of John Doe #8, teachers and students at Sylvania Woods Elementary School expressed concern to Principal Williams, administrators,

and other teachers concerning Carraway's behavior. As just one example, on or around December 2014, a then-fourth grade student went to the principal's office and told the Principal or an assistant principal, "[y]ou need to check Deonte's phone. There's some things with kids on it, nasty things."

323. Defendant Board breached its duty to supervise its staff by failing to adequately supervise the workplace despite the fact that it knew, or should have known, that Carraway sexually abused and exploited students. This failure to supervise includes, but is not limited to, the failure to thoroughly investigate the concerns from teachers and students concerning Carraway's behavior, the failure to supervise Carraway, and permitting a teacher's aide to pull students out of class.

324. Defendant Board breached its duty to supervise and retain competent employees by continuing to employee Carraway and/or permit him to work as a teacher's aide on an unpaid basis when the Board, Principal Williams, and other Sylvania Woods administration and teachers had received complaints about Carraway's inappropriate conduct and sexual abuse.

325. Reports were made to the administration about Carraway's predatory behavior but the Board failed to take any meaningful investigation and continued to employ Carraway. Despite this knowledge, the Board and its agents were deliberately indifferent and/or tacitly approved of this conduct by failing to take any meaningful action, failing to investigate, failing to deter, failing to supervise, and allowing Carraway to pull students out of class and escort them to different places in the school building where he sexually abused and exploited them.

326. Because of these complaints, the Board knew or should have known that Carraway was not competent or fit to be an employee or to be present in the school.

327.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendant Board of Education as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; and (F) Awarding such other relief as the Court deems just and proper.

### COUNT VII
**Intentional Infliction of Emotional Distress**
**(Plaintiffs v. Defendants Board of Education and Carraway)**

328.     Plaintiffs sue the Board of Education and Carraway for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

329.     At all relevant times, John Doe #8 attended Sylvania Woods Elementary School. when he was at Sylvania Woods, he was under the care, custody, and control of Defendant Board, its agents, servants, and employees, including Carraway.

330.     Defendant Board has a *loco parentis* relationship with its students and has a special duty to protect a student from harm.

331.     Defendants intentionally inflicted emotional distress on John Doe #8 through Carraway's sexual abuse and exploitation of John Doe #8.

332.     Carraway, acting individually and in his official capacity as an agent of the Board, engaged in conduct that was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to John Doe #8. Specifically, Carraway pressured and/or coerced John Doe #8 to engage in sexual acts with him, with other students, and to witness the sexual acts of other students.

333.     Carraway knew or should have known that sexually exploiting John Doe #8 and other young children by a trusted adult would result in extreme emotional distress to that child.

334.     Carraway's actions of sexually exploiting John Doe #8 constituted behavior so outrageous in character and so extreme in degree that it went beyond all possible bounds of decency and constitutes behavior intolerable in a civilized community.

335.     The conduct of Carraway was malicious, willful, and intentional.

336.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and

suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation, including expert witness fees; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

**COUNT VIII**
**Invasion of Privacy - Intrusion Upon Seclusion**
**(Plaintiffs v. Defendants Board of Education and Carraway)**

337.    Plaintiffs sue the Board of Education and Carraway for cause, claim, damages,

and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

338.     Carraway intentionally recorded video and took photographs of John Doe #8 in his home.

339.     The videos and pictures depict John Doe #8 and other students performing sexual acts with each other or with Carraway.

340.     The videos and pictures are of a highly sensitive nature as they show children as young as nine years old being sexually assaulted.

341.     Carraway's actions in recording and possessing these images violated John Doe #8's reasonable expectations of privacy.

342.     Carraway's actions in recording and possessing the images would be highly offensive to a reasonable person.

343.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

344.     At all times relevant to this Complaint, Carraway was acting within the scope of his duties and responsibilities as a teacher's assistant, choir director, and/or agent of the Board of Education.

345.     The conduct of Carraway was malicious, willful, and intentional.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation, including expert witness fees; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

## COUNT IX
### Battery
### (Plaintiffs v. Defendants Board of Education and Carraway)

346.     Plaintiffs sue Defendants Board of Education and Carraway for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

347.     Defendant Carraway intentionally caused John Doe #8 to be touched in a harmful and offensive manner.  Specifically, Defendant Carraway sexually abused John Doe #8 and forced him to engage in sexual acts with other students.

348.     Defendant Carraway also directed other children to engage in sexual acts with John Doe #8, and Defendant Carraway would threaten to shoot John Doe #8 when he would not cooperate.

349.     John Doe #8 did not and could not consent to the offensive touching that Defendant Carraway caused to occur.

350.     Defendant Carraway's actions were undertaken deliberately, with ill-will and actual malice.

351.     As a direct and proximate result of the Defendants' actions, John Doe #8 suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. John Doe #8 was deprived of educational opportunities and equal access to his education. John Doe #8 will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

352.     At all times relevant to this Complaint, Carraway was acting within the scope of his duties and responsibilities as a teacher's assistant, choir director, and/or agent of the Board of Education.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (C) Awarding Plaintiffs reasonable attorneys' fees; (D) Awarding Plaintiffs their costs and expenses in this litigation, including expert witness fees; (E) Awarding Plaintiffs

equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

## COUNT X
### Negligence – Violation of Mandatory Reporting Law
### (Plaintiffs v. Defendants Board of Education and Williams)

353.     Plaintiffs sue Defendants Board of Education and Williams for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

354.     Defendants Board and Williams owed Plaintiffs a duty to ensure compliance with mandatory reporter laws and ensure that its employees reported sexual harassment and abuse.

355.     Defendants Board, Williams, and others owed a special duty arising from the special relationship or in a *loco parentis* relationship Defendants Board, Williams, and others had with minor children, including the minor Plaintiff.

356.     Defendants Board, Williams, and others also owed a duty to prevent individuals who posed an unreasonable risk of harm to children to interact with children and to permit the children to be in these individuals' custody and control.

357.     Defendants Board, Williams, and others were required to promptly notify

authorities "as soon as possible" and submit a "written report" within 48 hours if the educator has "reason to believe that a child has been subjected to abuse or neglect." F.L. § 5-704.

358.     Defendants Board and Williams were also required by the Board's own administrative procedures to report sexual harassment and child abuse. Prior to Carraway's abuse of the minor Plaintiff and others, Defendant Board had actual knowledge that these administrative procedures – which required completion of a form to be documents – were not followed and complied with.

359.     Defendant Board hired Carraway as a dedicated aide in November 2014, and he continued in this position until September 2015. The Board thereafter allowed Carraway to volunteer at the school every day as a teacher's aide on an unpaid basis until Carraway's arrest on February 5, 2016.

360.     Defendants Board, Williams, and others breached this duty of care when they permitted Carraway to come into contact with children in the school, permitted him to walk these children home, and placed him a position of trust and authority over these children because they knew or should have known he was likely to harass and sexually abuse children, including the minor Plaintiff.

361.     Defendants Board, Williams, and others breached this duty of care when, as described in this complaint, employees of Defendant Board failed to promptly report these concerns in violation of Maryland law with respect to promptly reporting sexual abuse as required by Md. Code, § 5-704 of the Family Law Article. These employees did so in part to protect their own reputation, the reputation of the school, and the reputations of their colleagues.

362.     As a direct and proximate result of the Defendants' actions, the minor Plaintiff suffered and continues to suffer profound and permanent injuries. He consciously experienced

pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. The minor Plaintiff was deprived of educational opportunities and equal access to his education. The minor Plaintiff will require extensive psychological and psychiatric care and counseling and other treatment as a proximately result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (C) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (D) Awarding Plaintiffs reasonable attorneys' fees; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; and (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

### COUNT XI
### Negligence
### (Plaintiffs v. Defendants Board of Education and Williams)

363.     Plaintiffs sue Defendants Board of Education and Williams for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the

paragraphs of this Complaint as though set forth fully herein.

364.    Defendants Board and Williams owed Plaintiffs a duty of reasonable care to ensure that its employees would not sexually abuse students.

365.    Defendants Board and Williams owed Plaintiffs a duty of reasonable care to ensure that students were not forced to be placed under the control, authority, or power of an employee who had previously sexually abused a student.

366.    Defendants Board and Williams stand in an in *loco parentis* relationship with its students and has a special duty to protect a student from harm.

367.    Defendants breached this duty of care when, after the Board and its agents knew or should have known of Carraway's sexual abuse of children or his propensity to sexually abuse children, the minor Plaintiff was placed under the control, authority, direction, and power of Carraway and he sexually abused children, including the minor Plaintiff, both on school property and off school property.

368.    Carraway's affiliation with Judge Sylvania Woods and status and authority as an employee of Judge Sylvania Woods  was causally connected to the abuse of the minor Plaintiff because Defendants brought Carraway into contact and association with the minor Plaintiff and it was reasonably foreseeable that Carraway would abuse the minor Plaintiff.

369.    As a direct and proximate result of the Defendants' actions, the minor Plaintiff suffered and continues to suffer profound and permanent injuries. He consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment. The minor Plaintiff was deprived of educational opportunities and equal access to his education. The minor Plaintiff will require extensive psychological and psychiatric care and

counseling and other treatment as a proximately result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against all Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (C) Awarding Plaintiffs punitive damages in an amount to be determined at trial; (D) Awarding Plaintiffs reasonable attorneys' fees; (E) Awarding Plaintiffs equitable and injunctive relief compelling the Defendant Board of Education to (i) monitor school property; (ii) institute a formal, meaningful, transparent and timely process to investigate employees and/or agents accused of sexually abusing students; (iii) adopt and enforce meaningful policies concerning criminal background checks, child abuse clearance checks, and fingerprinting for all employees, including volunteers; (iv) adopt effective and transparent policies concerning when a former employee is ineligible from serving as a volunteer; and (v) implement a formal practice of keeping a written record of all complaints that are made about an employee or volunteer; and (F) Awarding Plaintiffs such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully submitted,

By: _____

Timothy F. Maloney
Matthew M. Bryant
Alyse L. Prawde
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301/220-2200 (tel.)
301/220-1214 (fax)

David Simpson, Esq.
DAVID M. SIMPSON, P.A.
6404 Ivy Lane, Suite 408
Greenbelt, MD 20770

*Counsel for Plaintiffs*